# Maintaining Essential Services in the District of Columbia in the Event Appropriations Cease

When the District of Columbia is otherwise prohibited by law from spending its appropriation, the District's Mayor is authorized under the Antideficiency Act to expend moneys necessary to maintain government services bearing a reasonable relationship to the safety of human life or the protection of property.

Under provisions of the District of Columbia Home Rule Act, the President has authority to employ the District of Columbia Metropolitan Police Force for purposes he deems necessary and appropriate where he has declared the existence of emergency conditions.

The President has inherent constitutional authority to use troops or police to preserve such order in the District of Columbia as may be necessary to protect federal property and functions.

December 15, 1988

MEMORANDUM OPINION FOR THE DEPUTY ATTORNEY GENERAL

## I. Introduction and Summary

This memorandum responds to your request of November 30, 1988, for advice of this Office concerning the manner in which essential services may be maintained in the District of Columbia in the event that the District is prohibited from expending its appropriation. In particular, you are concerned that the failure of the Council of the District of Columbia to fulfill the requirements of the "Armstrong Amendment" to the most recent act of Congress appropriating money for the District of Columbia, Pub. L. No. 100–462, § 145, 102 Stat. 2269, 2269–14 (1988) may "have the effect of prohibiting the expenditure of appropriated funds by the District after December 31, 1988." In that event, you have asked us to advise you "about the Mayor's authority to continue essential services under the Antideficiency Act or other relevant statutes." You have also asked us to address the issue of the President's authority in such circumstances.

We conclude that in the event the District is prohibited from spending its appropriation, the Mayor will be able to maintain services that bear a reasonable relationship to the safety of human life or the protection of property. We further believe that should the President declare an emergency he would also have express statutory authority to employ the Metropolitan Police Force as he deems necessary and appropriate. In addition, we conclude the President has the inherent constitutional authority to protect federal property and functions.

## II. Analysis

A. *Appropriations for the District of Columbia*

The annual budgets for the District of Columbia are proposed by the Mayor to the City Council. District of Columbia Self-Government and Governmental Re-organization Act, Pub. L. No. 93-198, § 446, 87 Stat. 774 (1973) ("D.C. Home Rule Act"). If adopted, a budget is then sent by the Mayor to the President for submission to Congress. *Id.* The most recent appropriations bill for the District of Columbia establishes the following condition precedent to the expenditure of any funds by the D.C. government:

> (b) None of the funds appropriated by this Act shall be obligated or expended after December 31, 1988, if on that date the District of Columbia has not adopted subsection (c) of this section.

§ 145, 102 Stat. at 2269–14 ("Armstrong Amendment").[1]

First, the "funds appropriated by this Act" applies to the "total budget of the District of Columbia government," D.C. Home Rule Act § 603(a), not just the amounts contributed by the federal government, called the "federal payment." D.C. Home Rule Act § 501.[2] All of these funds—the District's total budget—are subject to the following prohibition: "[n]o amount may be obligated or expended by any officer or employee of the District of Columbia government unless such amount has been approved by Act of Congress, and then only according to such Act." D.C. Home Rule Act § 446. This language is substantially identical to the general federal Antideficiency Act, which prohibits officers of the District of Columbia government, among others, from "mak[ing] or authoriz[ing] an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation." 31 U.S.C. § 1341(a)(1)(A). In addition, the legislative history of section 603 of the D.C. Home Rule Act makes clear that it is

---

[1] As set forth in section 145(c) of the Armstrong Amendment, the law the District of Columbia Council must approve by December 31, 1988, to receive its appropriations provides:

> (3) Notwithstanding any other provision of the laws of the District of Columbia, it shall not be an unlawful discriminatory practice in the District of Columbia for any educational institution that is affiliated with a religious organization or closely associated with the tenets of a religious organization to deny, restrict, abridge, or condition —
>
>> (A) the use of any fund, service, facility, or benefit; or
>>
>> (B) the granting of any endorsement, approval, or recognition, to any person or persons that are organized for, or engaged in, promoting, encouraging, or condoning any homosexual act, lifestyle, orientation, or belief

102 Stat. at 2269–14.

[2] Section 603(a) provides, in pertinent part·

> [N]othing in this Act shall be construed as making any change in existing law, regulation, or basic procedure and practice relating to the respective roles of the Congress, the President, the Federal Office of Management and Budget, and the Comptroller General of the United States in the preparation, review, submission, examination, authorization, and appropriation of the *total* budget of the District of Columbia government

89 Stat. at 814 (emphasis added).

intended to include "the standard anti-deficiency limitation now applicable to the District of Columbia under the Federal Budget and Accounting Act, restated so as to be applicable to the new city government. It requires all District officers and employers, including the Mayor and the Council, not to spend or authorize the expenditures of funds which would exceed available resources." H.R. Rep. No. 482, 93d Cong., 1st Sess. 38 (1973). *See also* H.R. Conf. Rep. No. 703, 93d Cong., 1st Sess. 46 (1973). Thus, absent a specific authorization, no monies may be spent by the District of Columbia government.[3]

## B. *The Antideficiency Act's Exception for Emergencies*

As noted above, the Antideficiency Act prohibits officers and employees of the United States Government and the District of Columbia government from "mak[ing] or authoriz[ing] an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation." 31 U.S.C. § 1341(a)(1)(A).[4] Thus, it would appear that if the D.C. Council were to fail to pass subsection (c) of the Armstrong Amendment by December 31, 1988,[5] the Mayor of the District of Columbia would be in violation of the Antideficiency Act if he were to expend any monies other than those authorized by law to keep open the D.C. government.

The only monies that the Mayor may spend are those authorized by an exception for emergencies. Section 1342 of title 31 of the U.S. Code, entitled "Limitation on Voluntary Services," prohibits:

> [a]n officer or employee of the United States Government or of the District of Columbia government [from] accept[ing] voluntary services for either government or *employ[ing] personal services exceeding that authorized by law except for emergencies involving the safety of human life or the protection of property.*

31 U.S.C. § 1342 (emphasis added).[6]

This Office has previously opined that this section prohibits "government officers and employees [from] involv[ing] the government in contracts for *em-*

---

[3] We do not here refer, of course, to items for which Congress has separately authorized and appropriated monies.

[4] Subsection (B) of section 1341 forbids any covered officer or employee from "involv[ing] either government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law." 31 U.S.C. § 1341(a)(1)(B).

[5] The constitutional validity of the Armstrong Amendment has recently been successfully challenged on First Amendment grounds in district court here in Washington. *See Judge Rebuffs Congress on D.C. Gay Rights,* The Washington Post, Dec. 14, 1988, at A1 This office has not examined the constitutional validity of the amendment.

[6] Despite the absence of this exception from the antideficiency provision in the D.C. Code, we believe that the exception in section 1342 applies to the District of Columbia as well We base this conclusion on the language of section 1342 itself, which states that it applies to "officers of the D.C. government." Moreover, consistent with the maxim of statutory construction that repeals by implication are not favored, *see, e g , Morton v. Mancari,* 417 U S 535 (1974), we think it best not to construe section 603(a) of the D.C. Home Rule Act as repealing the application of section 1342 to the District of Columbia.

*ployment, i.e.,* for compensated labor, except in emergency situations." *Authority for the Continuance of Government Functions During a Temporary Lapse in Appropriations,* 5 Op. O.L.C. 1, 8 (1981) (citing 30 Op. Att'y Gen. 129, 131 (1913)).[7]

Thus, during a lapse in appropriations, government may use unappropriated funds to "employ personal services" for those activities bearing a "reasonable relationship . . . [to] the safety of human life or the protection of property." *Id.* at 10. This has been thought to include, among other things, legal investigations by the Federal Bureau of Investigation, legal services rendered by the Department of Agriculture in connection with state meat inspection programs and enforcement of the Wholesome Meat Act of 1967, the investigation of aircraft accidents by the National Transportation Safety Board, and the protection and management of commodity inventories by the Commodity Credit Corporation. *Id.* ·

Accordingly, the Antideficiency Act does not prohibit the expenditure of funds by the Mayor of the D.C. government to employ personnel for the police and fire departments, the inspection of buildings, and all other activities bearing a "reasonable relationship [to] the safety of human life or the protection of property." *Id.* at 10. We are hesitant to be any more specific in the absence of more concrete questions.

## C. *The President's Authority to Maintain the Functioning of the Executive Branch*

In anticipation of emergencies, Congress has granted to the President express statutory authority to control and direct the Washington, D.C. police force. The D.C. Home Rule Act expressly provides that:

> Notwithstanding any other provision of law, whenever the President of the United States determines that special conditions of an emergency nature exist which require the use of the Metropolitan Police force for Federal purposes, he may direct the Mayor to provide him, and the Mayor shall provide, such services of the Metropolitan Police force as the President may deem necessary and appropriate.

D.C. Home Rule Act § 740(a). The plain meaning of the phrase "notwithstanding any provision of law to the contrary" convinces us that once the President de-

---

[7] In addition, 31 U.S.C. § 1515(b)(1)(B) provides, in relevant part:

[A]n official may make, and the head of an executive agency may request, an apportionment . . . that would indicate a necessity for a deficiency or supplemental appropriation only when the official or agency head decides that the action is required because of . . an emergency involving the safety of human life, the protection of property, or the immediate welfare of individuals when an appropriation that would allow the United States Government to pay, or contribute to, amounts required to be paid to individuals in specific amounts fixed by law or under formulas prescribed by law, is insufficient.

We have read this section as differing from section 1342 in small ways, but have said that "[any] distinction, however, is outweighed by the common practical effect of the two provisions." 5 Op. O.L.C. at 9 n.11

clares the existence of "special conditions of an emergency nature," he has specific statutory authorization that overrides the Antideficiency Act. Thus, even if the Mayor determines that police protection for federal property is not made necessary by the exception to the Antideficiency Act for emergency circumstances, the President may, as a matter of statutory law, demand and receive police protection.

Moreover, we believe that the President has the inherent authority to take steps to preserve such order in the District of Columbia as may be necessary to protect the functioning of the federal government. This Office has previously opined that a necessary adjunct of the President's power under Article II, Section 3 of the Constitution to "take Care that the Laws [are] faithfully executed" is the power "to protect federal property and functions." Memorandum for R. Kenly Webster, Acting General Counsel, Department of the Army, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel at 2 (Apr. 29, 1971) ("Rehnquist Memo") (citing Corwin, *The President: Office and Powers*, 130–38 (1957)). *See also* Memorandum for Robert E. Jordan III, General Counsel, Department of the Army, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel (May 11, 1970).

These opinions relied principally on *In re Neagle*, 135 U.S. 1 (1890). In that case, the Supreme Court approved the appointment and actions of a Marshal who was assigned to protect a Justice of the Supreme Court even in the absence of express statutory authority for that function. In doing so, the Court recognized the broad authority conferred on the President by the Constitution to protect the federal government. How far the President's inherent authority extends beyond safeguarding the physical safety of federal property and employees is a difficult question turning on specific facts and circumstances. We have previously opined that this power extends at least to "the use of troops [or police] to protect the functioning of the government by assuring the availability of federal employees to carry out their assigned duties and that troops may therefore be utilized to prevent traffic obstructions designed to prevent the access of employees to their agencies." Rehnquist Memo at 1.

DOUGLAS W. KMIEC
*Assistant Attorney General*
*Office of Legal Counsel*